J-A15001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF KARL E. BUTZ, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: LORRI ZIMMERMAN | : : : : : : : : | |
| | : | No. 1187 EDA 2020 |

Appeal from the Order Entered May 1, 2020
In the Court of Common Pleas of Monroe County Orphans' Court at
No(s):  No. 26 O.C. 2013

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 10, 2021**

Lorri Zimmerman appeals from the May 1, 2020 order approving the final accounting and proposed distribution of the estate ("the Estate") of her father, Karl E. Butz ("Decedent").  We affirm.

Given the limited nature of Zimmerman's issues on appeal, we focus only on the necessary occurrences in the certified record.  We also rely upon the apt May 1, 2020 opinion of the orphans' court, which catalogues the administration of the Estate in exacting detail with numerous citations to the transcripts of testimony.  Decedent died testate on January 11, 2011.  His two adult children, Zimmerman and Jeffrey T. Butz ("Butz") (collectively, "Beneficiaries"), were equal beneficiaries and the named co-executors of the Estate.  Beneficiaries hired Brenda Klinger, Esquire, to represent the Estate's interests.  Disputes arose over the next two years and Beneficiaries stipulated to their removal as co-executors and the appointment of James F. Marsh,

Esquire, as administrator *cum testamento annexo* ("Administrator") at a rate of $200 per hour. Administrator retained Attorney Klinger as counsel for the Estate at the same rate, which was identical to the one that she had negotiated with Beneficiaries prior to Administrator's appointment. Thereafter, Administrator undertook efforts to pay the Estate's outstanding debts and catalog and dispose of Decedent's remaining real and personal property.

Shortly after Administrator's appointment, an issue arose concerning a parcel of real estate containing a cell tower that was leased by a communications company ("the Cell Tower Property"). This tract was not a part of the Estate, but ownership of it was a matter of dispute amongst his immediate and extended family. On May 8, 2013, Administrator signed a document that, on its face, purported to grant an easement to the communications company with respect to the Cell Tower Property on behalf of the Estate. Since Decedent did not own the Cell Tower Property, no portion of Decedent's real estate holdings were burdened by this easement.

On July 3, 2013, Zimmerman filed a petition objecting to, *inter alia*, the granting of the easement for the construction of a cell phone tower on a parcel of real property (the "Cell Tower Property") that was not an asset of the Estate. **See** Petition, 7/3/13, at ¶¶ 16-20. She alleged Attorney Marsh should not have signed this document because "[t]itle to the servient estate was never vested in Decedent or the Decedent's estate." **Id**. at ¶ 18. An immediate ruling on this objection was deferred.

- 2 -

Zimmerman also objected to the sale of a piece of commercial property (the "Commercial Property"). The orphans' court summarized the facts surrounding the Commercial Property, describing it as

> a small, strip-type commercial building on property located at 2055 Route 611, Swiftwater, PA. The commercial building was developed and owned by Decedent at the time of his death. It consisted of several units that, for the most part, had provided office space . . . . At some point, . . . a portion of the building and real property was leased to a Dunkin Donuts franchisee for a store and drive-thru operation. The lease with the Dunkin Donuts franchisee included a right of first refusal to purchase the entire commercial property at the same price as any bona fide offer received by [Decedent] during the lease term.
>
> . . . .
>
> Ultimately, a local eye doctor . . . made an offer . . . to purchase the Commercial Property for $700,000. [T]he offer was relayed to the Dunkin Donuts franchisee under the right of first refusal in the lease that allowed them to match the terms of that offer. Dunkin Donuts agreed to these same terms and an agreement of sale was executed by Dunkin Donuts and [Attorney Marsh].

Orphans' Court Opinion, 5/1/20, at 6, 8. On July 25, 2014, Attorney Marsh was granted leave to sell the Commercial Property by the orphans' court. *See* Order, 7/25/14, at ¶¶ 1-2. Several months later, Zimmerman filed a petition to stay the sale. *See* Petition for Stay of Sale, 9/16/14, at ¶¶ 1-30. The same day, the orphans' court denied the petition.

Thereafter, for approximately two years, the parties litigated a separate matter related to the Estate that is not implicated in this appeal.[1] On August

_____

[1] Extensive hearings and motions practice were entertained concerning the sale of a 64-acre farm owned by Decedent. Zimmerman's objections to the
*(Footnote Continued Next Page)*

- 3 -

8, 2017, Attorney Klinger filed a petition for adjudication of a proposed distribution and final accounting of the Estate. Zimmerman filed objections to the distribution and accounting alleging, *inter alia*, that: (1) the Commercial Property should not have been sold; (2) Administrator's signing of the easement documents concerning the Cell Tower Property had "resulted in litigation costing Zimmerman tens of thousands of dollars in costs and legal fees;" and (3) that the attorneys' fees paid from the proceeds of the Estate were unreasonable and excessive. Objections to Final Accounting and Proposed Distribution, 9/11/17, at ¶ 6(a), (c)-(d). Accordingly,

> [a] hearing on the Objections was first held on January 12, 2018. Following that hearing, the parties engaged in further discovery and communication in an attempt to clarify and narrow issues. Following a motion to schedule additional hearings, [the orphans' court] held hearings on January 31, 2019; March 8, 2019; April 23, 2019; June 13, 2019; August 27, 2019; August 28, 2019; November 6, 2019; November 8, 2019; and December 13, 2019[,] for a total of ten (10) hearing dates. The January 12, 2018, January 31, 2019, November 6, 2019[,] and December 13, 2019 hearing dates were half-day hearings and the rest were full-day hearings.

Orphans' Court Opinion, 5/1/20, at 1. During these hearings, Zimmerman also raised a separate objection to a "designation that a home equity line of credit ("HELOC") in Decedent's name was to be deducted from Zimmerman's anticipated distribution." *Id*. at 53 (cleaned up). She also averred that Administrator and Attorney Klinger should be assessed various surcharges.

---

sale of that property were addressed in a separate appeal. *See In re Estate of Butz*, 159 A.3d 47 (Pa.Super. 2016) (unpublished memorandum at 1-4).

After these proceedings concluded, the orphans' court denied Zimmerman's objections and approved the final accounting and proposed distribution. *Id*. at 69. On May 28, 2020, Zimmerman filed a timely notice of appeal to this Court. The next day, the orphans' court directed her to file a concise statement of errors complained of on appeal. Zimmerman responded with a filing that listed twenty-two separate issues. In lieu of authoring an opinion pursuant to Pa.R.A.P. 1925(a), the orphans' court relied upon the reasoning set forth in its extensive May 1, 2020 opinion and order.

Zimmerman presents the following issues for our consideration:

Did the orphans' court abuse its discretion and commit an error law by approving the Final Accounting . . . and denying the objections of Zimmerman when it concluded that:

1. The Commercial Property was properly sold by the Administrator;

2. Zimmerman was required to reimburse the Estate for the HELOC that was paid off with Estate assets;

3. The Administrator was authorized to grant the cell tower easement, the administrator properly granted the cell tower easement, and that Zimmerman suffered no harm;

4. All the attorneys' fees claimed by the Estate's attorney were reasonable and just, including fees related to non-Estate property and matters and when it concluded all the fees the administrator charged the Estate were reasonable; and

5. Neither the Administrator nor the Estate's counsel should be assessed a surcharge?

Appellant's brief at 7-8 (cleaned up; issues reordered).

Zimmerman's first claim challenges the sale of the Commercial Property. In sum, she presents two related objections: (1) that the sale of the property violated an alleged agreement between Beneficiaries to take direct possession of the property as tenants in common; and (2) that the property was not sold to the corporate entity identified as Swiftwater Donuts, LLC, but to 2055 Realty, LLC.  **See** Zimmerman's brief at 57.

> The standard and scope of our review in this context is deferential:
>
> When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

**In re Estate of Whitley**, 50 A.3d 203, 206-07 (Pa.Super. 2012).  Where the court's findings of fact are supported by the record, we are bound by those determinations.  **In re Klein's Estate**, 378 A.2d 1182, 1187 (Pa. 1977). "However, we are not constrained to give the same deference to any resulting legal conclusions."  **Whitley**, **supra** at 207.

Thus, "[t]his Court's responsibility is to assure that the record is free from legal error and to determine if the [court's] findings are supported by competent and adequate evidence.  **Klein**, **supra** at 1187.  A decision of the orphans' court will not be reversed "unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." **In re Estate of Luongo**, 823 A.2d 942, 951 (Pa.Super. 2003).  "An abuse of discretion occurs when the court misapplies existing law, makes a manifestly

unreasonable judgment, or rules with partiality, prejudice or ill will." ***In re Padezanin***, 937 A.2d 475, 484 (Pa.Super. 2007).

As Zimmerman's first issue concerns the court-approved sale of real estate by Administrator, we note that our Supreme Court has previously held that the power of an administrator over real estate is limited to "its sale by order of court for payment of debts." ***In re Huff's Estate***, 150 A. 98, 99 (Pa. 1930). Otherwise, "what an administrator does in relation to the decedent's real estate he does as agent for the heirs." ***Id***. Here, there is no dispute that the orphans' court approved the sale of the Commercial Property.

With respect to the first aspect of her claim, the record does not support Zimmerman's allegation that she and Butz reached an accord to take possession of the Commercial Property. While there were ongoing negotiations, the orphans' court credited extensive testimony from Administrator, Attorney Klinger, and Butz that no agreement was reached:

> When an agreement . . . as to distribution of the Commercial Property . . . could not be agreed to by Beneficiaries, the Administrator took steps to sell the property. A court order for the sale was sought and obtained[.] Administrator testified credibly the Zimmerman did not want the . . . Commercial Property sold, but Butz did not want to take [the] title jointly with Zimmerman, and the parties could not agree on any other distribution. Therefore, a sale had to occur to settle the estate, and the price obtained was fair and reasonable.

Orphans' Court Opinion, 5/1/20, at 10 (cleaned up). The closing of the sale was ultimately delayed for various reasons. To finalize the sale, Administrator sent a written ultimatum to the Dunkin Donuts representatives directing them

to close within a certain designated time period or the agreement of sale would be cancelled and title would be conveyed to Beneficiaries. The sale did not close within that timeframe, but eventually closed soon thereafter.

As the orphans' court explained,

Zimmerman argued the Administrator should have cancelled the deal and conveyed the property to her and Butz as "promised" in the correspondence to Dunkin Donuts . . . . However, Administrator testified that he was advised shortly after sending this letter to Dunkin Donuts that both beneficiaries were no longer in agreement at that point to take the property instead of selling to Dunkin Donuts. Administrator testified that Butz still wanted the property sold, that Butz did not want to take title with Zimmerman, and that the ultimatum to Dunkin Donuts was an attempt to get them to the closing table to complete the transaction. Attorney Klinger recalled the same events. The gambit worked and Dunkin Donuts closed on the purchase and the proceeds were paid to the Estate. **It was also noteworthy that Zimmerman's own counsel at the time sent a letter dated December 18, 2014 to Administrator stating the Commercial Property should not be conveyed to Beneficiaries after all[.]**

Zimmerman contends the agreement of sale with Dunkin Donuts should have been cancelled because the time period to close had expired and the Administrator "agreed" to convey to property to her and Butz. [However, the] Administrator's statement in the letter to Dunkin Donuts about a deadline to close or the property would be conveyed to Beneficiaries was not an actual agreement with Beneficiaries to do so. Rather, it was a negotiating tool to try and accomplish a closing with Dunkin Donuts. There was no obligation created for the Administrator to have to convey the property to Beneficiaries.

*Id*. at 11-12 (cleaned up; emphasis added).

While "settlement agreements" in the context of estates are favored in this Commonwealth as a way to circumvent potentially divisive litigation, "[t]he existence of such agreement must be shown by clear and unambiguous

evidence." **In re Estate of Brojack**, 467 A.2d 1175, 1179 (Pa.Super. 1983).

Here, the orphans' court did not credit Zimmerman's unsupported assertions

that there was an agreement between Beneficiaries respecting the disposition

of the Commercial Property. Our review of the record finds ample support for

its conclusion. Indeed, Zimmerman's own attorney sent correspondence

memorializing the lack of a settlement agreement. Accordingly, the court's

findings are binding upon this Court and we will not overturn based upon

Zimmerman's conjecture and surmise.

The remaining aspect of Zimmerman's first claim alleges that

Administrator violated the terms of the orphans' court approval of the sale of

the Commercial Property by transferring the property to a corporate entity

that was different from the one originally identified in the at-issue order. **See**

Order, 7/25/14, at ¶ 1 ("[Administrator] is authorized to carry out the sale of

the real property to Swiftwater Donuts, LLC, pursuant to the terms of the

Agreement of Sale for the purchase price of $700,000.00."). Zimmerman

alleges Administrator erred by ultimately selling the property to an entity

named 2055 Realty, Inc.

> The orphans' court addressed this issue as follows:

> Zimmerman also made the argument that the Dunkin Donuts
> contract should have been terminated because the property was
> sold to a different buyer than the one in the Agreement of Sale.
> She noted that the court order approving the sale named a specific
> buyer, and that the property was actually conveyed to a different
> buyer. . . . The lessee of the commercial property and buyer on
> the Agreement of Sale was "Swiftwater Donuts, LLC." The buyer
> at closing was "2055 Realty, LLC." The principal of both entities

who signed documents at closing, who signed the Agreement of Sale, and who signed the original Lease, was Richard Albert. As Attorney Marsh noted, Mr. Albert was the same principal for both entities.

[Administrator] testified convincingly that the sale was to the same person/principal who was on the Agreement of Sale and who had the right of first refusal in the Lease (being Swiftwater Donuts, LLC). They just chose a different corporate entity (2055 Realty, LLC) to hold the real estate. This happens frequently in commercial real estate transactions. It did not invalidate the sale, nor did the Administrator do anything that violated his fiduciary duty[.]

Orphans' Court Opinion, 5/1/20, at 13.

Our review finds that the court's conclusions are well-supported by competent evidence of record. Furthermore, we fail to discern any harm to the Estate or Beneficiaries in transferring the Commercial Property to one corporate entity in lieu of another. Tellingly, Zimmerman has offered no citations to binding or persuasive legal authorities in support of her claim that this change in the mere identity of the purchasing party somehow undermined the court-approved sale of the Commercial Property. We find no abuse of discretion or legal error in the conclusions of the orphans' court regarding the disposition of the Commercial Property.

Zimmerman's second claim challenges the finding that she was responsible for repaying a loan she received from Decedent that he funded through a HELOC secured against his primary residence. Specifically, Zimmerman's portion of the proceeds of the Estate was offset by approximately $130,000 to repay the balance of this loan.

- 10 -

At the hearings, Zimmerman testified that Decedent had previously loaned her money to facilitate her home construction business, which was then repaid after the sale of the subject property. **See** N.T. Hearing, 3/8/19, at 181. Butz similarly testified that Decedent had funded Zimmerman's home construction efforts in the past through the use of the HELOC. **See** N.T. Hearing, 8/27/19, at 104-05, 190-91. With specific reference to the at-issue funds, Attorney Klinger testified that Zimmerman had freely stated early in the administration of the Estate that she had an oral agreement to repay Decedent in the amount of the outstanding balance of the HELOC. **See** N.T. Hearing, 11/6/19, at 42-43. Although Zimmerman later denied the existence of such an agreement, the orphans' court found that her testimony was "argumentative," "evasive" and not believable. Orphans' Court Opinion, 5/1/20, at 67 ("Zimmerman provided no credible explanation about the HELOC, or her conversation with Attorney Klinger in which she . . . admitted responsibility for re-payment[.]").

Zimmerman is asking us to vacate the credibility determination of the orphans' court. **See** Zimmerman's brief at 47-48 ("Neither the Estate, nor any other interested party at the [o]rphans' [c]ourt level, presented any evidence at the [h]earing which would support a finding . . . that Zimmerman should be liable for the HELOC."). We may not do so under these circumstances. While the existence of this loan was disputed, the orphans' court chose to credit the testimony of Attorney Klinger and Butz above that of

Zimmerman. We are bound by such determinations where, as here, they are supported by competent evidence. Accordingly, we find no error law or abuse of discretion.[2] No relief is due.

Zimmerman's third claim for relief concerns the Cell Tower Property, which was not vested in Decedent at the time of his passing. However, ownership of the Cell Tower Property is disputed between Beneficiaries. Initially, the land was part of a larger tract owned by their maternal grandmother. On June 26, 1995, she signed a contract to sell it to J.T. Butz Enterprises, Inc. ("Butz Enterprises")[3] but passed away in 1996 before the transaction was recorded. Accordingly, Zimmerman maintains that ownership of the Cell Tower Property passed to maternal grandmother's heirs: Decedent's wife and Beneficiaries' mother, Marilyn Butz, and her brother, Robert Miller, Sr. Nonetheless, Butz Enterprises leased the property to Nextel WIP Lease Corp., which was succeeded by SBA Towers IV, LLC ("SBA") in

---

[2] Zimmerman devotes much of her discussion of this issue to an argument that her obligation to repay the loan is unenforceable because it was never reduced to writing and, thus, violates the statute of frauds. *See* Zimmerman's brief at 44-46 (citing 33 P.S. § 3). However, Zimmerman has mischaracterized the nature of her debt. Here, the lender holding the HELOC is **not** seeking to obtain vicarious payment from Zimmerman based upon her promise to repay Decedent, which would trigger application of the statute of frauds. Rather, the Estate is seeking primary enforcement of her agreement to repay the money that she received directly from Decedent. Therefore, Zimmerman is not being held liable for the debt of another and the statute of frauds does not apply.

[3] This corporate entity is owned and operated by Butz.

- 12 -

September 2002. Further complicating matters, Marilyn Butz died testate in 2006 and her residual property was placed in a trust with Butz and Zimmerman as co-trustees. In August 2007, a document styled as an "Agreement of Sale of Real Estate" for the Cell Tower Property was signed by Robert Miller, Jr. (son and heir of Robert Miller, Sr.), Decedent as executor of Marilyn Butz's estate, Beneficiaries as co-trustees, and Butz as grantee.

As summarized by the orphans' court,

Zimmerman contends the Cell Tower Property was co-owned by [Robert Miller] and a trust from the estate of Zimmerman and Butz's late mother (Marilyn Butz). Butz contends he was sole owner of the Cell Tower Property outright by virtue of [either] an agreement of sale he had with [his maternal grandmother] or with Robert Miller and the late Marilyn Butz and/or the trust under will of Marilyn Butz. The parties presented two agreements of sale regarding the Cell Phone Property, both of which purported to contain terms to convey the property to Butz. Zimmerman contends that either the agreements were not valid or had lapsed due to Butz's failure to subdivide the parcel sooner as required in the agreements.

Orphans' Court Opinion, 5/1/20, at 15-16 (cleaned up). Ownership of the Cell Tower Property is not directly implicated by this appeal since Decedent's only involvement with that property appears to be as his wife's executor. Simply put, the Cell Tower Property was not an Estate asset.

However, as previously noted, while managing the Estate, Administrator signed a document styled as an "Easement Agreement" that purported to grant a perpetual and exclusive easement to SBA concerning the Cell Tower Property. *See* Easement Agreement, 5/8/13, at 1-11. This contract misrepresented that the Estate possessed a one-half ownership interest in the

- 13 -

Cell Tower Property with the remaining interest residing in Robert Miller, Jr. *Id*. at 1. Administrator explained that he had signed this document to secure payment of Decedent's inheritance taxes. Specifically, "[s]ometime in 2012, [SBA] and Butz [executed] a buy-out of the lease by [SBA]" which resulted in a payout of $300,000 to Butz. Orphans' Court Opinion, 5/1/20, at 15. In exchange for Administrator's signature on the easement, Butz loaned the Estate $88,041.42 to facilitate payment of the outstanding taxes. This sum was later refunded to Butz out of the sale of the Commercial Property.

Zimmerman asserts Administrator should not have signed the easement agreement. *See* Appellant's brief at 35-36 ("As a result of [Administrator's] actions . . ., Butz unfairly profited to the detriment of the Estate, and to the detriment [of] Zimmerman[.]"). She also contends Administrator should not have authorized the reimbursement of inheritance taxes to Butz because the proceeds of the lease buyout were not rightfully his.

The orphans' court discussed the issue as follows:

It is undisputed that the amount paid on account of inheritance tax was the amount due from the Estate, that the Estate did not pay the inheritance tax, and that a reimbursement was owed to someone. Zimmerman and Butz disagree as to who that someone is that is entitled to reimbursement.

[Administrator] made an informed decision to reimburse Butz for the inheritance tax. There is no harm to the Estate because [it] actually owed the inheritance tax. . . . [Administrator] relied on the fact that Butz authorized payment of the tax out of non-Estate assets. There was also a plausible argument that Butz was the sole owner of the [Cell Tower Property]. Therefore, [Administrator] authorized the reimbursement to Butz in good

- 14 -

faith and completed his duty to see that the inheritance tax was paid.

Zimmerman . . . seems to advocate reimbursement should have been made equally to her and Butz. However, that is not a liability of the Estate. Zimmerman has the ability to pursue remedies about . . .the proceeds of the Cell Tower Property sale in court, and has actually already started a proceeding.[4] That is an issue between Zimmerman and Butz that is outside the Estate and has no adverse consequences to the Estate itself or rights of Beneficiaries . . . . We find the testimony of Butz, Attorney Klinger and [Administrator] convincing with regard to the issue of the inheritance tax payment and find no failure on the part of [Administrator] to act according to his fiduciary duty.

Orphans' Court Opinion, 5/1/20, at 16-17 (cleaned up).

Assuming, *arguendo*, that Administrator erred in signing the at-issue easement agreement, such error was harmless. This doctrine is applicable in the instant context. **See In re Duffel's Estate**, 176 A. 731, 731-32 (Pa. 1935); **see also**, **e.g.**, **Estate of Fritz v. Fritz**, 798 A.2d 243, 245 (Pa.Super. 2002). Furthermore, we may raise it *sua sponte*. **See Commonwealth v. Hamlett**, 234 A.3d 486, 492-93 (Pa. 2020).

No colorable argument has been advanced that Decedent had an ownership interest in the Cell Tower Property. Accordingly, Administrator's signing of the easement agreement had no appreciable effect on the assets of the Estate or Beneficiaries' rights thereto. With respect to the reimbursement paid to Butz, Administrator did nothing more than repay the funds forwarded

---

[4] At the time of the ruling of the orphans' court, Zimmerman had already instituted a separate civil action naming Butz and Administrator as defendants concerning the Cell Tower Property transactions.

for inheritance tax purposes. Simply stated, the value of the Estate was not negatively impacted by the mere source of these funds. Furthermore, Butz's entitlement to the proceeds of the transactions with SBA concerning the Cell Tower Property is an ancillary civil matter that is not at-issue in this appeal. Regardless of whether Administrator's signing of the easement agreement caused harm to Zimmerman's separate financial interests, it did no harm to the Estate. Based on the foregoing discussion, we discern no error of law or abuse of discretion in the orphans' court holding.

Appellant's fourth claim challenges the fees distributed in connection with the administration of the Estate by arguing that Administrator and Attorney Klinger "produced insufficient information to justify their fees." Zimmerman's brief at 61-62. Pursuant to 20 Pa.C.S. § 3537, the orphans' court "shall allow such compensation to the personal representative as shall in the circumstances be reasonable and just[.]" Accordingly, "[t]he determination of the reasonableness of a fiduciary's compensation is left to the sound discretion of the orphans' court." **In re Estate of Rees**, 625 A.2d 1203, 1206 (Pa.Super. 1993) (cleaned up). "Thus, when reviewing the judgment of the orphans' court regarding the allowance or disallowance of attorneys' and executor's fees, absent a clear error or an abuse of discretion, we will not interfere with the orphans' court determination." **Id**. (cleaned up) (citing **In re Estate of Getz**, 618 A.2d 456, 462 (Pa.Super. 1992)). "A fiduciary is entitled to 'reasonable and just' compensation for the services he

- 16 -

provides." **In re Estate of Sonovick**, 541 A.2d 374, 376 (Pa.Super. 1988).

"Attorneys and executors seeking compensation from an estate have the burden of establishing facts which show the reasonableness of their fees and entitlement to the compensation claimed." **Rees**, **supra** at 1206 (citing **Sonovick**, **supra** at 376).

This Court has discussed the parameters of this inquiry, as follows:

What is a fair and reasonable fee is sometimes a delicate, and at times a difficult question. The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

**In re LaRocca's Tr. Estate**, 246 A.2d 337, 339 (Pa. 1968).

The orphans' court provided an apt summary of the fiduciary and attorney fees generated in this case:

The total legal fees set forth on the accounting as of August 4, 2017, was $90,270.00  The accounting covered July 1, 2014[,] through August 4, 2017.  It also appears to have covered the time expended prior to July 1, 2014.  The Summary of Account listed receipts to the Estate totaling $954,907.15. . . .  [T]he gross value of the Estate [was] somewhere closer to $1.1 million to $2.6 million.

. . . .

Here, Attorney Klinger initially agreed with Zimmerman and Butz to be compensated on a percentage basis . . ., pursuant to a written fee agreement.  Attorney Klinger testified that the co-

- 17 -

executors then orally agreed with her to switch to an hourly billing rate of $200 per hour. When Attorney Marsh was appointed [Administrator] in 2013, he and Attorney Klinger also agreed to attorney's fees in the amount of $200 per hour. This was the same rate [Administrator] was to receive by the court appointment . . . .

. . . .

[Administrator] issued a monthly billing statement for work performed, in the customary manner of attorney, and in the same manner as Attorney Klinger in her monthly statements. A total of those billings was set forth in the [final accounting] of [Administrator] . . . .

The total amount billed by [Administrator] at the time of the filing of the [final accounting] was $20,516.49. This covered July 1, 2014 to August 2017.

Orphans' Court Opinion, 5/1/20, at 33-34, 40.

At the hearings, both Administrator and Attorney Klinger were examined, at length and in excruciating detail, concerning virtually every billing statement issued in the case. While they were not always able to recall the particulars of each task charged for in perfect detail, both parties maintained that they had billed appropriately for time spent administering the Estate in good faith. Critically, Zimmerman has not identified any specific allegedly erroneous billings in her arguments before this Court, but suggests that the entirety of the fees paid should be vacated.

We find the analysis by the orphans' court of the factors identified in

***LaRocca's***, ***supra***, compelling as to the rates charged:

The hourly rate was a reasonable amount in light of the work to be performed, challenges to be encountered, the amount of assets involved, the degree of responsibility involving, and in light of fees

charged in Monroe County, PA for estate work by attorneys with similar experience. . . . There were well over $1 million in assets, the distribution and values of which were immediately an issue between Beneficiaries. The assets to be valued and disposed of consisted of real estate and personal property, much of which was claimed to have been taken by Beneficiaries before inventoried or valued. In short, there was a lot of work to be done to settle this estate due to the disagreements of Beneficiaries. The rate charge of $200 per hour was reasonable under the circumstances.

Orphans' Court Opinion, 5/1/20, at 35 (cleaned up). Moreover, the orphans' court found both Attorney Klinger and Administrator testified credibly and convincingly that the work billed for was reasonable and performed in service of their duties to the Estate. *Id*. at 36, 41-50.

We find no basis upon which to disturb the court's findings. The certified record supports its conclusions regarding the testimony of Attorney Klinger and Administrator. As noted above, we may not supplant the credibility determinations of the orphans' court with our own. In light of the complexity of the assets involved and the personal relationships that Administrator and Attorney Klinger were obliged to navigate in overseeing the Estate, the fees charged do not appear to be unreasonable.

Zimmerman's final issue asserts that the orphans' court should have assessed a surcharge due to the above-described allegations of error. *See* Zimmerman's brief at 65 ("[A] surcharge is the only appropriate remedy in this action, as the breaches of fiduciary duties . . . in the form of unjustified fees and commissions, must be disgorged[.]"). We disagree.

Under Pennsylvania law, "a fiduciary who has negligently caused a loss to an estate may properly be surcharged for the amount of such loss." ***In re Estate of Gordon***, 511 A.2d 869, 871 (Pa.Super. 1986). In this context, a surcharge "is the penalty for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty and is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care." ***In re Dobson's Estate***, 417 A.2d 138, 142 (Pa. 1980). The party seeking to impose a surcharge for "mismanagement of an estate" bears the burden of proving the underlying wrongdoing. ***In re Estate of Geniviva***, 675 A.2d 306, 311 (Pa.Super. 1996). Finally, "[e]ven if there is a breach of duty, however, where there is no loss, there is no basis for a surcharge." ***In re Estate of Warden***, 2 A.3d 565, 573 (Pa.Super. 2010).

Instantly, Zimmerman has not identified a discrete loss to the Estate that is attributable to any breach of duty by Administrator or Attorney Klinger. Even assuming, *arguendo*, that a breach occurred based upon Administrator's execution of an easement over property not owned by the Estate, there is no quantifiable basis to assess a surcharge in this case. ***See*** Orphans' Court Opinion, 5/1/20, at 52 ("We find no grounds for a surcharge in this matter or for any damages as a result of a breach of fiduciary duty."). Therefore, we find no abuse of discretion or error of law in the decision by the orphans' court to deny Zimmerman's blanket request for surcharges.

Order affirmed.

- 20 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/10/2021